## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| Patricia Hughes, | |
| Plaintiff, | Civil No. 3:19-cv-01611-JAM |
| v. | |
| Hartford Life and Accident Insurance Co., | May 22, 2020 |
| Defendant. | |

## RULING ON PLAINTIFF'S MOTION TO COMPEL [ECF NO. 30] AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER [ECF NO. 36]

This is an ERISA disability benefits case. The plaintiff, Patricia Hughes, has moved the Court for an order compelling the defendant, Hartford Life and Accident Insurance Company ("Hartford"), to comply with thirteen requests for production and nine interrogatories. (Mot. to Compel, ECF No. 33.) Her discovery requests fall into four principal groups; they seek to explore (1) the completeness of Hartford's administrative record; (2) Hartford's conflict of interest; (3) alleged bias on the part of Hartford's medical consultants; and (4) Hartford's compliance with Department of Labor regulations governing employee benefit plans. Hughes also asks the Court to order an *in camera* review of one document that Hartford excluded from the record under a claim of attorney-client privilege. (*Id.* at 18-22.) Finally, Hartford seeks a protective order quashing three document subpoenas that Hughes served on its medical consultants. (ECF No. 36.)

In an ERISA case, the Court's review is ordinarily limited to the administrative record that was before the plan administrator when it made its benefit determination. *Halo v. Yale Health Plan*, 819 F.3d 42, 60 (2d Cir. 2016). The Court may go outside the record, but first it must identify a "good cause" to do so. *Id.* These limitations often spawn discovery disputes, because the

administrator frequently contends that they render anything outside the record irrelevant and undiscoverable, while the claimant often argues that they control only admissibility and not discoverability.  This case is an example of a dispute between an ERISA claimant and administrator over the standard for discoverability of extra-record information.

The Court holds – as many other courts in the Second Circuit have done, and consistent with how Judge Meyer decided a discovery dispute in the parties' earlier case – that an ERISA plaintiff can obtain extra-record discovery to the extent that she shows, through facts and not conclusory allegations, a "reasonable chance" that the particular discovery request will yield a "good cause" for expanding the record at summary judgment or trial.  *E.g.*, *Pretty v. Prudential Life Ins. Co. of Am.*, 696 F. Supp. 2d 170, 184 (D. Conn. 2010); *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (AWT) (SALM), 2017 WL 772328, at *2 (D. Conn. Feb. 28, 2017); *see* discussion, Section II.A *infra.*  Applying this standard to the first three groups of discovery requests, the Court finds that Hughes has (1) supported one of her requests directed to the completeness of the administrative record, but not the others; (2) has not supported her requests for discovery into Hartford's conflict; and (3) has partially supported one of her requests directed to the alleged bias of Hartford's medical consultants, but not the others.  With respect to group (4) – the requests directed to Hartford's compliance with DOL regulations – the Court holds that the regulations at 29 C.F.R. §§ 2560.503-1(j)(3) and –(m)(8) command production of some, but not all, of the requested documents.  The Court also accepts Hughes's principal argument about the allegedly privileged document, and it will order Hartford to produce it for *in camera* review.  Hughes's motion to compel is therefore granted in part and denied in part, as further detailed in Sections II and III below.  Hartford's motion for protective order is addressed in Sections II.C and III.

## I.      BACKGROUND

Hughes was an employee of Children's Healthcare of Atlanta and a beneficiary of its long-term disability benefit plan.  (*See* Plan, ECF No. 1-2.)  In 2011 she began experiencing symptoms of vestibular disorders and other maladies, and in 2012 she submitted a disability claim to the plan's insurer and claims administrator, Hartford.  (Compl., ECF No. 1 ¶¶ 26-32.)  Hartford paid disability benefits for nearly four years, but it stopped paying after concluding that Hughes allegedly "did not provide adequate proof of disability beyond October 5, 2016." (Memo. of L., Mot. for Prot. Order, ECF No. 36-1, at 3.)

Hughes sued, and her case was assigned to Judge Meyer.  *Hughes v. Hartford Life & Acc. Ins. Co.*, No. 3:17-cv-01561 (JAM) (D. Conn.) ("*Hughes I*").  In that case, as in this one, Hughes sought discovery beyond the administrative record.  (Mot. for Discovery, *Hughes I*, ECF No. 30.) Judge Meyer denied the motion "for substantially the reasons set forth in [Hartford's] opposition," and also because Hughes failed "to show an adequate basis in this record for her claim to need discovery."  (Order Denying Pl.'s Mot. for Discovery, *Hughes I*, ECF No. 36.)

The case then proceeded to a bench trial.  Judge Meyer ruled in Hughes's favor, holding that Hartford had not provided her with the "full and fair review" required by Department of Labor regulations.  (Order on Mots., *Hughes I*, ECF No. 72, at 1.)  He remanded the case to Hartford "to conduct a full and fair review."  (*Id.*)

In the course of its remand review, Hartford engaged Exam Coordinators Network ("ECN"), which it describes as "a third-party vendor that has contracted . . . to provide qualified physicians and health care professionals to serve as independent medical consultants."  (Memo. of L., Mot. for Prot. Order, ECF No. 36-1, at 4.)  ECN in turn engaged a neuro-otologist, Dr. Eric Slattery, to review Hughes's case.  (*Id.* at 4-5.)  It also engaged a neurologist, Dr. Arousiak

Varpetian Maraian.  (*Id.* at 5.)  In reports dated July 23, 2019, Drs. Slattery and Maraian disagreed with Hughes's doctors about the source of her complaints and the extent of her limitations. Hartford says that it provided their reports to Hughes's counsel on August 1, 2019 and invited a response.  (*Id.* at 6-7.)

Events picked up speed in August 2019 because Hartford's period for conducting its remand review was set to expire on September 1st.  In a letter dated August 15th, Hughes's counsel criticized the Slattery and Maraian reports.  Hartford sent the criticisms to the two doctors and asked them to respond.  Hartford received the responses on August 26th and conveyed them to Hughes's counsel on August 28th.  Hartford says that counsel telephoned on August 30th – the last day of the review period – to say that he wished to reply to the responses on September 3rd, but that he would not agree to extend the claim deadline by enough time to permit an evaluation of that reply.  (*Id.* at 10.)

Hartford alleges that, with no extension agreed upon, it was constrained to make a claims decision on August 30th.  It says that it "issued its decision on appeal on Friday, August 30, 2019 (the last business day before the September 1, 2019 deadline), based upon the information contained in the Administrative Record as of August 27, 2019," and it "determined that its decision to terminate Plaintiff's claim was correct."  (*Id.* at 10.)

Hughes sees things differently.  She contends that, in affirming its benefit denial before her counsel could reply to the doctors' responses, Hartford has committed exactly the same misconduct that Judge Meyer held to be a denial of "full and fair review" in *Hughes I*.  She says that on remand, as in *Hughes I*, Hartford "unilaterally terminated the administrative process" and refused to allow her "a response to late-arriving medical opinions."  (Compl., ECF No. 1, ¶ 4.) She alleges that "Hartford's motive here was transparent – to once again cut off the administrative

process, giving itself the last word and *intentionally* denying [her] the chance to respond to its latest consultant rationales." (*Id.* ¶ 121) (emphasis in original).

Hughes filed this lawsuit on October 14, 2019. (*Id.*) The parties filed their Rule 26(f) report on December 9, 2019, and Hughes indicated that she would be seeking discovery outside the administrative record – although she did not say that she would be seeking all of the classes of extra-record evidence or any of the third-party discovery that she would later pursue. (ECF No. 21, at 7.) Hartford responded that "discovery beyond the Administrative Record is not appropriate in this ERISA case," (*id.*) and thus it seemed clear on December 9, 2019 that the parties were headed for a dispute.

Hughes did not serve her interrogatories and requests for production until February 6, 2020. (ECF No. 33-1.) Hartford served its responses and objections on March 10, 2020. (ECF No. 33-2.) Hartford objected to each of Hughes's discovery requests, although it did provide some responses "[s]ubject to and without waiving" its objections. (*Id.*) The parties met and conferred on March 27th and April 6th but could not resolve the dispute. (ECF No. 33-13.) Hughes therefore moved to compel on April 10th. (ECF No. 33.)

Hughes sought non-party as well as party discovery. She served subpoenas on ECN and on Drs. Slattery and Maraian in early February (ECF Nos. 28-4, 28-5, 28-6), but did not serve copies on Hartford. Correctly noting that this omission violated Rule 45(a)(4), Hartford sought and obtained an emergency temporary protective order. (ECF Nos. 28, 29.) Before it could do so, however, Dr. Slattery began producing documents to Hughes – and Hughes has based some of her arguments in support of her motion to compel on those documents. In any event, when Hughes sought to reissue the subpoenas on proper notice under Rule 45(a)(4), Hartford moved for a permanent protective order. (ECF No. 36.)

Both motions are fully briefed (ECF Nos. 33, 40, 42; 36-1, 39, 43), and the Court heard extensive oral argument on May 13th.  The motions are therefore ripe for decision.  The Court will begin by outlining the legal standards for extra-record discovery in an ERISA case, and then analyze whether Hughes has met that standard.

## II.    DISCUSSION

### A.    Legal Principles Governing Discovery in ERISA Benefits Cases

When adjudicating claim disputes under an employee benefit plan, the court's review is ordinarily confined to the record that was originally before the claims administrator.  "[D]istrict courts typically limit their review to the administrative record before the plan at the time it denied the claim."  *Halo*, 819 F.3d at 60; *accord Muller v. First UNUM Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003).  This is true whether the court is reviewing the claim under an "arbitrary and capricious" or *de novo* standard.  *Halo*, 819 F.3d at 60.

This limitation does not appear in the statute, but courts have inferred it from Congress's purposes in enacting ERISA.  As the Supreme Court has explained, Congress sought a "careful balanc[e]" between "the need for prompt and fair claims settlement procedures" and "the public interest in encouraging the formation of employee benefit plans."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  To avoid chilling plan formation, "Congress sought to create a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place."  *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Varity Corp. v. Howe*, 516 U.S. 489 (1996)) (quotation marks and brackets omitted).  Limiting review to the administrative record is one way of ensuring that "litigation expenses" do not "unduly discourage employers" from establishing benefit plans.  "The doctrine limiting review of ERISA claims to evidence before the plan administrator was developed to

prevent federal courts from becoming substitute plan administrators and thus to serve ERISA's purpose of providing a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 318 (2d Cir. 2008) (summary order).

This limitation can be set aside when there is good cause to do so. "[T]he decision whether to admit additional evidence" beyond the administrative record "is one which is discretionary with the district court, but which discretion ought not be exercised in the absence of good cause." *Halo*, 819 F.3d at 60 (quoting *DeFelice v. Am. Int'l Life Assur. Co.*, 112 F.3d 61 (2d Cir. 1997); *accord Muller*, 341 F.3d at 125 ("[T]he presumption is that judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.") (citation omitted). One example of "good cause" to go outside the record is when that record is demonstrably incomplete. *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646-47 (2d Cir. 2002) ("[T]he incompleteness of the administrative record might – under certain circumstances – constitute good cause for hearing additional evidence.").

The Second Circuit Court of Appeals has identified some scenarios that do *not* constitute good cause to consider evidence beyond the administrative record, and one such scenario concerns administrator conflicts of interest. The Supreme Court has held that an administrator is a conflicted fiduciary when it "both evaluates claims for benefits and pays benefits." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). The Second Circuit, however, has held that the mere existence of a so-called "*Glenn* conflict" is an insufficient reason to consult extra-record evidence. *Locher v. UNUM Life Ins. Co. of Am.*, 389 F.3d 288, 294-95 (2d Cir. 2004). While an administrator is conflicted whenever it functions as both "claims reviewer and claims payor," that conflict "does not *per se* constitute 'good cause' to consider evidence outside of the administrative record." *Id.*

at 294.  To hold otherwise would "effectively eliminate the 'good cause' requirement . . . because claims reviewers and payors are almost always either the same entity or financially connected in some other way."  *Id.* at 295.

Of course, the admissibility of extra-record evidence is not necessarily dispositive of its discoverability.  Federal Rule of Civil Procedure 26(b)(1) provides that relevant, non-privileged information "need not be admissible in evidence in order to be discoverable."  Consistent with this principle, several courts have held that "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence."  *Pretty*, 696 F. Supp. 2d at 182; *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229 (E.D.N.Y. 2008); *Allison v. UNUM Life Ins. Co.*, No. CV04-0025, 2005 WL 1457636, at \*11 (E.D.N.Y. Feb. 11, 2005)).

The Second Circuit has yet to provide district courts with a detailed framework for deciding disputes over discoverability of extra-record evidence in ERISA cases – and in this case, both parties have attempted to fill the void with extreme positions.  For her part, Hughes contends that ERISA cases are no different from non-ERISA cases; she therefore argues that any plaintiff should be permitted broad discovery in any ERISA case, limited only by "ordinary considerations of relevance and proportionality under" Federal Rule of Civil Procedure 26(b)(1).  (Mot. to Compel, ECF No. 33, at 10-12.)  This argument ignores one of Congress's legislative purposes – because it anticipates that every ERISA case will involve a discovery phase that will drive up costs and potentially discourage employers from offering benefit plans – and moreover it has little if any genuine support in the case law[1] and was already rejected in *Hughes I.*  (*See* Order Denying Pl.'s

---

[1]    The plaintiff cites *Liyan He v. Cigna Life Insurance Co. of New York*, 304 F.R.D. 186 (S.D.N.Y. 2015) and *Hogan-Cross v. Metropolitan Life Insurance Co.*, 568 F. Supp. 2d 410

Mot. for Discovery, *Hughes I*, ECF No. 36) (denying discovery "for substantially the reasons set forth in defendant's opposition . . . and for failure of plaintiff to show an adequate factual basis in this record for her claim to need discovery"). For its part, Hartford seems to suggest that reducing litigation costs is the *only* concern implicated in an ERISA discovery dispute. (Opp'n to Mot. to Compel, ECF No. 40, at 1-3.) While Hartford acknowledges that courts have sometimes permitted discovery beyond the administrative record (*id.* at 3-6), it suggests that this should be an exceptionally rare occurrence because such orders do not "conform to Congressional policy." (*Id.* at 1.) Yet this argument ignores that Congress intended not only to control program costs, but also to promote "prompt and fair claims settlement procedures." *Pilot Life Ins. Co.*, 481 U.S. at 54. As one court put it, "[t]he risk of additional burden to plan administrators must be balanced against the right of aggrieved participants to obtain, as contemplated by Congress, meaningful judicial review." *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 106 (W.D.N.Y. 2000).

---

(S.D.N.Y. 2008) (Mot. to Compel, ECF No. 33, at 11), but neither case genuinely supports her position.

 While it is true that the *Liyan He* court rejected the discoverability standard adopted by many other courts – a "reasonable chance that the requested discovery will satisfy the good cause requirement" – it nevertheless noted the "significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures." 304 F.R.D. at 188-89. It therefore declined to compel almost all of the requested discovery. *Id.* at 189.

 The Court interprets *Hogan-Cross* less as an endorsement of an extreme plaintiff's position than as a rejection of an extreme defendant's position. In *Hogan-Cross* the insurer made a "[b]lunderbuss attempt[] to cut off discovery on the ground that it never or rarely should be permitted in these cases," and the court held that that position was meritless. 568 F. Supp. 2d at 416. To the extent that *Hogan-Cross* can be read as endorsing Hughes's position, it is unpersuasive. *Hogan-Cross* compelled "conflict discovery" without contending with *Locher's* holding that the existence of a conflict, without more, is an insufficient basis for consulting extra-record evidence. And *Hogan-Cross* is also inconsistent with the strong weight of authority in this circuit. *See* discussion *infra*; *see also Joyner v. Cont'l Cas. Co.*, 837 F. Supp. 2d 233, 242 (S.D.N.Y. 2011) (declining to follow *Hogan-Cross*).

Between the parties' extreme positions, courts have developed two principal approaches. Some have adopted a "good cause standard," under which extra-record discovery is barred unless the plaintiff first makes the same "good cause" showing that will ultimately be required for admissibility. *Cf.*, *e.g.*, *Lane v. The Hartford*, No. 06-Civ.-3931 (DC), 2006 WL 3292463, at *2 (S.D.N.Y. Nov. 14, 2006). Others have adopted a less stringent "reasonable chance standard," under which the plaintiff need only show a "reasonable chance that the requested discovery will satisfy the good cause requirement." *E.g.*, *Burgio*, 253 F.R.D. at 230 ("[I]n order to justify discovery beyond the administrative record, Plaintiff need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement.") (internal quotation marks omitted); *Benjamin*, 2017 WL 772328, at *2 (same).

The Court will apply the "reasonable chance standard" to this case, for three principal reasons. First, the alternative – the "good cause standard" – puts the plaintiff in the difficult position of having to prove an entitlement to discovery with evidence that, in many cases, will only be obtainable through discovery. *E.g.*, *Anderson v. Sotheby's Inc. Severance Plan*, No. 04-Civ.-8180 (SAS) (DFE), 2005 WL 6567123, at *6 (S.D.N.Y. May 13, 2005) ("If a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery."). Second, the "reasonable chance standard" does not result in every ERISA case having a discovery period – and, therefore, addresses concerns about runaway litigation expenses. *See*, *e.g.*, *Pretty*, 696 F. Supp. 2d at 184 (applying reasonable chance standard but nevertheless denying discovery); *Yasinoski v. Conn. Gen. Life Ins. Co.*, No. CV07-2573 (RRM) (AKT), 2009 WL 3254929 (E.D.N.Y. Sept. 30, 2009) (same). Third, the "reasonable chance standard" has been applied by other judges in this district. *E.g.*, *Pretty*, 696 F. Supp. 2d at

10

184; *Benjamin*, 2017 WL 772328, at *2; *cf. also Puri v. Hartford Life & Acc. Ins. Co.*, 784 F. Supp. 2d 103, 106 (D. Conn. 2011) (plaintiff allowed discovery upon "rais[ing] a colorable allegation" of good cause).  In ERISA cases even more than in some other contexts, there is value in uniformity.  *Cf.*, *e.g.*, *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002), *overruled on other grounds by Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003) (one goal of the statute is to "induc[e] employers to offer benefits by ensuring a predictable set of liabilities, under uniform standards of primary conduct").

Having concluded that Hughes's motion to compel requires a showing of "reasonable chance," the Court next considers how she might make that showing.  Other courts in this circuit have concluded that conclusory allegations do not suffice.  *E.g.*, *Laakso v. Xerox Corp.*, No. 08-cv-6376-CJS, 2011 WL 3360033, at *4 (W.D.N.Y. Aug. 3, 2011) ("[W]here a plaintiff contends that the claims administrator had a conflict of interest, he cannot obtain discovery outside of the administrative record based merely by making conclusory allegations."); *Baird v. Prudential Ins. Co. of Am.*, No. 09-Civ.-7898 (PGG), 2010 WL 3743839, at *9 (S.D.N.Y. Sept. 24, 2010) ("[A] party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest.") (citation omitted).  Rather, "the plaintiff must make 'specific factual allegations' to support the discovery request."  *Laakso*, 2011 WL 3360033, at *4 (quoting *Quinones v. First UNUM Life Ins. Co.*, No. 10-Civ.-8444 (SAS), 2011 WL 797456, at *2 (S.D.N.Y. Mar. 4, 2011)).

Combining this last observation with the "reasonable chance standard" yields the legal principle that governs most of Hughes's discovery requests.[2]  With respect to each discovery

---

[2]     As will be discussed in Section II.B.4, additional principles apply to Hughes's requests for production of documents relating to Hartford's claim procedures and processes.

request at issue, the motion to compel will be granted to the extent that Hughes has shown, through facts and not through conclusory allegations, that the request has a reasonable chance of revealing information that will constitute good cause for Judge Meyer to expand his review beyond the administrative record.

### B.     Application of the Foregoing Principles to Hughes's Motion to Compel

Hughes seeks an order compelling Hartford to comply with thirteen requests for production and to answer nine interrogatories.  (Mot. to Compel, ECF No. 33, at 16-18.)  She breaks them into four categories: (1) discovery requests that seek to explore "the completeness of the 'administrative record' (i.e., whether the claim file contains all information and facts known to Defendant when it made its adverse benefit determination);" (2) requests probing "the extent to which Hartford's financial conflict of interest influenced its benefit determination;" (3) requests exploring "bias and credibility of Hartford's consultant medical reviewers;" and (4) requests directed to "Hartford's compliance with ERISA's procedural requirements as spelled out in the Department of Labor's claims regulation," 29 C.F.R. § 2560.503-1.  (*Id.* at 12.)  She also seeks (5) "the privilege log created during [*Hughes I*] . . . in native format with metadata intact" (*id.* at 17), and production or *in camera* review of the one document listed on that log.  (*Id.* at 17-21.)  The Court examines each category in turn.

### 1.     Requests exploring the completeness of the administrative record

As Hughes notes, "the 'administrative record' is a term of art" and may not always be "synonymous with the insurer's claim file."  (*Id.* at 22; *accord Chau v. Hartford Life Ins. Co.*, No. 1:14-cv-8484-GHW, 2016 WL 7238956, at *5 (S.D.N.Y. Dec. 13, 2016) ("The 'administrative record' in an ERISA action is the evidence that the fiduciaries themselves considered.") (citation and quotation marks omitted).)  She therefore "issued several discovery requests intended to

confirm the administrative record contains all the facts known to defendant that are relevant to the court's decision on the merits."  (Mot. to Compel, ECF No. 33, at 22.)  These requests were Requests for Production 2, 3, 6, 7, 9, 10 and 11, and Interrogatories 5 and 6.[3]

Courts often deny motions to compel responses to these sorts of requests when the movant offers no facts suggesting that the insurer's record is incomplete.  In *Chau*, for example, the

---

[3]     These requests and interrogatories read as follows:

**Request for Production No. 2:**  Please produce all documents or ESI which you contend demonstrate that your claims procedures, under the Plan, contain "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants" within the meaning of 29 C.F.R. § 2560.503–1.

**Request for Production No. 3:**  Please produce all documents or ESI that reference or describe your policies and procedures to ensure the professional qualifications, independence and impartiality of medical consultants retained to review claims and/or examine claimants.

**Request for Production No. 6:**  Please produce all documents or ESI not included in the claim file you produced on January 9, 2020, and which refer to the Plaintiff, Patricia Hughes, whether by name, Social Security Number, claim number or any other means of identification. Please identify any responsive documents or ESI produced in response to other requests.

**Request for Production No. 7:**  Please produce in native format with metadata intact all drafts, versions, edits, or amendments of the letter dated August 30, 2019, written by Ms. Hally B. Rupert upholding Hartford's decision to terminate Ms. Hughes' benefits on remand from the Court.

**Request for Production No. 9:** Please produce all documents or ESI that reflect claims manuals, guidelines or policies used or consulted in the adjudication of Ms. Hughes' claim or appeals which demonstrate or reflect internal procedures for selecting claims for Independent Medical Examinations (IMEs) versus non-examining file reviews.

**Request for Production No. 10:** Please produce all claims manuals used or consulted in the adjudication of Ms. Hughes' claims or appeals. Please identify any responsive documents or ESI produced in response to other requests.

**Request for Production No. 11:** Please produce all documents or ESI reflecting any internal rules, guidelines or procedures which describe or discuss the employability or disability status of a claimant who suffers from intermittent absences from work due to their symptoms.

**Interrogatory 5:**  Please identify all documents provided to Dr. Arousiak Varpetian Maraian for her review of the Plaintiff's claim or appeal. If those documents are included within the claim file produced to Plaintiff on January 9, 2020, please provide the Bates numbers of all documents provided to Dr. Maraian. [Footnote continued on next page.]

plaintiff noted that the insurer's record did not include "the arrangements, agreements and communications between . . . Hartford and its reviewing doctors . . . and other third parties," but offered no evidence that these "'arrangements, agreements and communications' were considered by Hartford in terminating her benefits . . . ."  *Chau*, 2016 WL 7238956, at *5.  The plaintiff therefore failed to "provide adequate grounds to justify discovery on the basis that the record that has been disclosed to her is incomplete."  *Id.*; *accord Aitken v. Aetna Life Ins. Co.*, No. 16-Civ.-4606 (PGG) (JCF), 2017 WL 455547, at *3 (S.D.N.Y. Jan. 19, 2017) ("Since the plaintiff has not shown the need to inquire into the parameters of the record in this case, that request is denied.").

In support of her motion to compel compliance with this class of requests, Hughes points out that the existing record does not include any drafts of Hartford's August 30, 2019 letter upholding on remand its decision to terminate her disability benefits.  (Mot. to Compel, ECF No. 33, at 23.)  Hughes argues that the drafts might reveal "when Hartford made up its mind" and, by extension, reveal what information it truly considered – since Hartford could not have considered any information that arrived after it reached its decision.  (*Id.*)  In response, Hartford represents that "[t]he Administrative Record already contains the information considered by Hartford Life in making its determination, how Hartford Life reached its decision, and the outside assistance that Hartford Life sought from independent medical consultants."  (Opp'n to Mot. to Compel, ECF No. 40, at 13.)  Hartford adds that even if it drafted its letter before August 30, 2019, doing so would have been a reasonable response to Hughes's counsel's gamesmanship surrounding the September 1st decision deadline – gamesmanship intended "either to cause Hartford Life to miss its deadline

---

**Interrogatory 6:**  Please identify all documents provided to Dr. Eric Slattery for his review of the Plaintiff's claim or appeal. If those documents are included within the claim file produced to Plaintiff on January 9, 2020, please provide the Bates numbers of all documents provided to Dr. Slattery.

to respond, or to cause it to issue its determination without an adequate opportunity to evaluate any additional information submitted by Plaintiff and to seek expert medical evaluation of any such additional information." (*Id.* at 14-15.)

The Court concludes that Hughes has come forward with enough factual information to support Request for Production No. 7 – the request that sought production of "drafts, versions, edits or amendments" of the August 30, 2019 letter.  While those drafts are not strictly "evidence that the fiduciar[y itself] considered," *Chau*, 2016 WL 7238956, at *5, they may be probative of when Hartford reached its decision and the information upon which that decision was based.  And while Hartford may indeed have very good explanations for drafting the letter when it did, it will have opportunities to place those explanations before the court; in the meantime, the existence of those explanations is an insufficient reason for immunizing the drafts from discovery.  The Court will therefore order Hartford to comply with Request for Production No. 7.

Hughes has not come forward with facts to support her other requests.  Request No. 6, for example, seeks "all documents or ESI not included in the claim file . . . and which refer to the Plaintiff."  But she offers no reason to suppose that the administrative record is missing anything other than the drafts of the August 30, 2019 letter; Request No. 6 is therefore exactly the sort of discovery request that courts have rejected when unaccompanied by any factual basis for suspecting that the record is incomplete.  *Chau*, 2016 WL 7238956, at *5; *Aitken*, 2017 WL 455547, at *3.  Interrogatories 5 and 6 ask Hartford to identify all documents that were provided to Drs. Maraian and Slattery, but Hartford answered that the identity of those documents is already in the administrative record (ECF No. 33-2, at 9-10), and Hughes offers no facts to dispute this.

The Court will accordingly deny Hughes's motion to compel with respect to Request for Production No. 6 and Interrogatories 5 and 6.[4]

### 2. Requests directed to Hartford's conflict of interest

When an administrator is conflicted, the court typically considers that conflict in determining whether the benefit denial was proper. "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (quoting Restatement (Second) of Trusts § 187 cmt. D (1959)) (brackets omitted). A conflict of interest exists when the administrator "both evaluates claims for benefits and pays benefits . . . ." *Glenn*, 554 U.S. at 112. In this case, the plan gives discretion to Hartford (ECF No. 1-2), and Hartford does not dispute that it is the sort of "conflicted administrator" discussed in *Glenn*. (Opp'n to Mot. to Compel, ECF No. 40, at 16) (conceding conflict but arguing that it is "insufficient" to justify conflict discovery).

As previously noted, the mere existence of a "*Glenn* conflict" is an insufficient basis for expanding the court's review beyond the administrative record. "[A] conflict of interest does not *per se* constitute 'good cause' to consider evidence outside of the administrative record," even on "a *de novo* review." *Locher*, 389 F.3d at 294. Any other rule would "effectively eliminate the 'good cause' requirement . . . because claims reviewers and payors are almost always either the same entity or financially connected in some other way." *Id.* at 295.

Applying these principles to the discovery context, several courts have held that the mere existence of a conflict is insufficient to support discovery beyond the administrative record. "[A]

---

[4]     Hughes says that Requests for Production 2, 3, 9, 10 and 11 implicated not only the first of her four categories – discovery directed to the completeness of the administrative record – but other categories as well. They will therefore be ruled upon in other sections of this Ruling.

structural conflict of interest is not sufficient by itself to support good cause to allow discovery beyond the record." *S.M. v. Oxford Health Plans (NY), Inc.*, No. 12-Civ.-4679 (ER) (JCF), 2014 WL 1303444, at *4 (S.D.N.Y. Apr. 1, 2014); *accord Rubino v. Aetna Life Ins. Co.*, No. CV-07-377 (LDW) (AKT), 2009 WL 910747, at *5 (E.D.N.Y. Mar. 31, 2009) ("Plaintiff's contention that there exists a 'structural conflict of interest because Aetna is both the claim insurer and claim administrator' falls far short of satisfying the standard necessary for the court to order discovery outside the administrative record."). Courts in the Second Circuit typically deny "conflict discovery" unless the plaintiff comes forward with some additional facts beyond the existence of the conflict, "such as lack of established criteria for determining an appeal, a practice of destroying or discarding all records within minutes after hearing an appeal, or a failure to maintain written procedures for claim review." *Pretty*, 696 F. Supp. 2d at 183 (citation and quotation marks omitted); *Andrews v. Realogy Corp. Severance Pay Plan for Officers*, No. 13-CV08210 (RA), 2015 WL 736117, at *8 n.8 (S.D.N.Y. Feb. 20, 2015).

Hughes seeks to compel discovery into Hartford's conflict,[5] but in her initial memorandum she based her motion solely on the existence of the conflict. (Mot. to Compel, ECF No. 33, at 24-

---

[5]    Specifically, she says that Requests for Production 8 and 9, and Interrogatories 1, 2 and 4 "go to the issue of whether Hartford's financial conflict of interest has influenced its decision to deny . . . benefits." (Mot. to Compel, ECF No. 33, at 24.) These discovery requests read as follows:

**Request for Production No. 8:** Please produce all documents or ESI in the possession of Hartford from any Department of Insurance or other regulatory authority that demonstrates any finding, accusation or fine paid by Hartford for unfair claims handling in group disability adjudication or conduct inconsistent with its fiduciary duties from January 1, 2009 through December 31, 2019.

**Request for Production No. 9:** Please produce all documents or ESI that reflect claims manuals, guidelines or policies used or consulted in the adjudication of Ms. Hughes' claim or appeals which demonstrate or reflect internal procedures for selecting claims for Independent Medical Examinations (IMEs) versus non-examining file reviews.

**Interrogatory 1:** Please state whether Hartford keeps statistics on the numbers or percentages of claims approved or rejected by individual claims personnel. [Footnote continued on next page.]

25.)  In its opposition paper, Hartford pointed out that Hughes "provide[d] no specifics other than to assert that a structural conflict is present," and it correctly added that "[t]his, in itself, is insufficient." (Opp'n to Mot. to Compel, ECF No. 40, at 17.)  In her reply brief, Hughes responded that she "does not merely allege that a conflict exists."  (Reply, ECF No. 42, at 3.) Rather, "[s]he alleges that Hartford has acted on [the conflict] repeatedly in ways that have seriously undermined the reliability of its decision process."  (*Id.*)  Among other things, she says that Hartford "aggressively overemphasized video surveillance," "cherry-picked the evidence it sent to its medical consultants," and "violated 'full and fair review' by sandbagging [her] with an IME report obtained during its 2017 review and refusing her direct requests to respond" as noted by Judge Meyer in his *Hughes I* decision.  (*Id.*)

Leaving aside whether these allegations could support other discovery requests, they do not support the specific requests to which Hughes seeks to compel compliance.  "Evidence that a conflict affected a decision may be categorical (such as a 'history of biased claims administration') or case specific (such as an administrator's deceptive or unreasonable conduct)."  *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010).  Here, Hughes is proffering "case specific" factual allegations, but she seeks "categorical" discovery.  Requests for Production 8 and 9 and Interrogatories 1, 2 and 4 do not inquire about Hartford's conduct on her claim, but rather about its conduct with respect to other claimants' claims.  (Mot. to Compel, ECF No. 33, at 16-17.)  Hughes offers no authority for the proposition that a claimant can use case specific facts

---

**Interrogatory 2:**  Please state whether Hartford keeps statistics on the numbers or percentages of administrative appeals approved or rejected by individual appeals specialists.

**Interrogatory 4:**  Please state the total number of appeals approved and rejected by Ms. Hally B. Rupert from January 1, 2017 to December 31, 2019.

as a lever for obtaining categorical discovery, and the Court has found none.  *Cf.*, *e.g.*, *Paris-Absalom v. Aetna Life Ins. Co.*, No. CV2011-0610 (RRM) (MDG), 2012 WL 4086744, at *2 (E.D.N.Y. Sept. 17, 2012) (denying discovery where the requested information had no "bearing on any purported conflict of interest").

Even without this mismatch between the requests and the facts on which they claim to be based, courts often decline to order compliance with the sort of discovery requests that Hughes has propounded here.  Hughes seeks to know, for example, "the numbers or percentages of administrative appeals approved or rejected by individual appeals specialists" (Mot. to Compel, ECF No. 33, at 17, Interrog. No. 2), but courts have refrained from ordering compliance with similar requests because bare numbers or percentages of claim denials are meaningless without additional context – and that context cannot be provided without holding mini-trials on the other claims.  As the Third Circuit Court of Appeals recently explained, a bare denial rate does "not prove bias or conflict of interest," because the plaintiff would also "have to show that each of those decisions was unreasonable based on the evidence in each file."  *Reichard v. United of Omaha Life Ins. Co.*, __ Fed. App'x __, 2020 WL 883108, at *4 (3d Cir. Feb. 24, 2020).  Although *Reichard* was a non-precedential decision, this Court finds its reasoning to be persuasive and consistent with cases around the country.  *E.g.*, *Rickaby v. Hartford Life & Acc. Ins. Co.*, No. 15-cv-00813-WYD-NYW, 2016 WL 1597589, at *3 (D. Colo. Apr. 21, 2016) (claim denial rate, on its own, is not "probative of any bias or lack thereof;" "a simple tally of the number of grants and denials would lack meaning, particularly where there is no information regarding whether the denials were wrongly decided"); *Whalen v. Standard Ins. Co.*, No. SACV-08-0878 DOC (MLGx), 2010 WL 346715, at *2 (C.D. Cal. Jan. 14, 2010) ("A simple mathematical proportion of decisions in which each doctor denies benefits is of no relevance unless it can also be shown that those denials were

wrongly decided."). The Court will therefore deny Hughes's motion to compel compliance with the "conflict discovery" sought in Requests for Production 8 and 9 and Interrogatories 1, 2 and 4.

### 3. Requests directed to potential bias by third-party medical reviewers

Hughes seeks to discover information "going to bias and conflict of interest of third-party medical reviewers."[6] In support of these requests, she cites two reports that Dr. Slattery authored on other claimant's cases, and she contends that they "consistently validate[] the central point of

---

[6]     Hughes says that the following requests for production and interrogatories go to this issue:

**Request for Production No. 1:**  Please produce all contracts between Hartford and Exam Coordinators Network ("ECN") for the time period of January 1, 2015 to December 31, 2019.

**Request for Production No. 3:**  Please produce all documents or ESI that reference or describe your policies and procedures to ensure the professional qualifications, independence and impartiality of medical consultants retained to review claims and/or examine claimants.

**Request for Production No 4:**  Please produce a copy of each and every medical consultant report received from Exam Coordinators Network ("ECN") from January 1, 2017 to December 31, 2019, redacted to protect the identify of each claimant.

**Request for Production No. 5:**  Please produce all documents or ESI reflecting payments made by Hartford to ECN for the time period of January 1, 2015 to December 31, 2019. This request will be satisfied by documents or ESI which reflect the total amount of payments for each year.

**Request for Production No. 12:**  Please produce all documents or ESI summarizing the outcomes of claims, including findings, benefit payments, and changes to the payment status or duration of payments, where medical reviews were arranged through ECN during the time period of January 1, 2015 to December 31, 2019.

**Interrogatory No. 7:**  For each physician listed below, please state the total number of long-term disability claims for which the physician conducted file reviews or independent medical examinations from January 1, 2017 to December 31, 2019, whether at Hartford's request or at the request of a vendor acting on behalf of Hartford: a. Dr. Arousiak Varpetian Maraian; b. Dr. Eric Slattery.

**Interrogatory No. 8:**  Please state the number of claims in which Hartford denied or terminated benefits during the time period from January 1, 2017 to December 31, 2019 based, in whole or in part, on a medical review prepared by each physician below: a. Dr. Arousiak Varpetian Maraian; b. Dr. Eric Slattery.

**Interrogatory No. 9:**  Please state the amount of money paid to Exam Coordinators Network ("ECN") for each year during the time period from January 1, 2015 to December 31, 2019.

[her] claim: that vestibular migraines and balance disorders commonly cause unpredictable episodes of complete incapacitation." (Mot. to Compel, ECF No. 33, at 5-7.) She also says that "ECN appears to have convinced Dr. Slattery to substantively alter his addendum report in a way that benefitted Hartford." (*Id.* at 7.)[7]

The two Slattery reports do not support Hughes's quest for additional discovery. She argues that they "raise[] many questions about how Dr. Slattery's handling of [her] claim was influenced by Hartford and ECN" (*id.* at 5), but the Court disagrees. As Hughes concedes, both reports *support* disability (*id.* at 5-6) – and because they do, both reports actually *undercut* the claim that Dr. Slattery is biased in favor of Hartford. If the reports had opined that patients with vestibular migraines and balance disorders were not disabled, her claim that Dr. Slattery always sides with Hartford would at least be understandable. But since the two reports support disability, they hurt rather than help her arguments for conflict discovery.

In contrast, the alterations to Dr. Slattery's report do support some limited discovery. Hughes points out that in the first draft of his report, Dr. Slattery opined that while Botox injections

---

[7]     Hughes cites several other statements in the medical reports as evidence "of pro-insurer, anti-claimant bias." (Mot. to Compel, ECF No. 33, at 4-9.) She says, for example, that Dr. Slattery opined about the potential for "false positives" in a test without offering "evidence to suggest that is actually true;" that he advocated for a specific type of balance testing; and that Dr. Maraian improperly relied on an absence of emergency room treatment in reaching certain of her findings. (*Id.*) Yet courts distinguish between discovery "relating to the conflict" and "discovery into the substantive merits of the claim," generally holding that the latter is impermissible in an ERISA case. *E.g.*, *Murphy v. First UNUM Life Ins. Co.*, No. 15-CV-820 (SJF) (SIL), 2016 WL 526243, at *5 (E.D.N.Y. Feb. 9, 2016) (internal quotation marks omitted); *Schrom v. Guardian Life Ins. Co. of Am.*, No. 11-Civ.-1680 (BSJ) (JCF), 2012 WL 28138 (S.D.N.Y. Jan. 5, 2012) ("[A]bsent serious procedural deficiencies, discovery into the substantive merits of a claim remains off limits.") (citation omitted). The Court regards Hughes's comments about testing, emergency room treatment and so forth as merits disputes, and as such, they are insufficient to support the discovery that she seeks. *Feltington v. Hartford Life Ins. Co.*, No. 14-CV-6616 (ADS) (AKT), 2016 WL 1056568, at *13 (E.D.N.Y. Mar. 15, 2016) (where plaintiff contended that a medical report was too suspect to be relied upon, the "issue goes to the merits of whether Hartford's determination was arbitrary and capricious, and cannot serve as a basis for additional discovery").

can sometimes help migraine sufferers, "often patient's symptoms of imbalance do not improve." (ECF No. 33-8, at 2.)  But his final report omitted this seemingly claimant-friendly statement and replaced it with: "I defer treatment discussions regarding migraine to a neurologist."  (ECF No. 33-8, at 5.)  Hughes argues that Dr. Slattery excised a statement that "tends to validate the intractability to treatment of [her] disabling balance symptoms."  (Mot. to Compel, ECF No. 33, at 7.)  Hartford responds that this change was made not at its or ECN's instigation, but rather in response to Hughes's lawyer's "demand[] that Dr. Slattery refrain from opining on the treatment of migraines."  (Opp'n to Mot. to Compel, ECF No. 40, at 22.)  This may prove true, but Hughes has made enough of a showing to merit exploring it through carefully limited discovery.

The Court reaches this conclusion even though Hughes made this showing with an improperly obtained document.  Hartford urges the Court to decide the motions as if it had never seen the first draft of Dr. Slattery's report, because Hughes acquired that draft with a subpoena that violated Rule 45(a)(4).  (Opp'n to Mot. to Compel, ECF No. 40, at 20.)  In response, Hughes's counsel acknowledges breaking the rules but asks the Court to consider the draft report nevertheless, because the failure to copy Hartford on the Slattery subpoena was an innocent "administrative error."  (Mot. to Compel, ECF No. 33, at 5 n.2.)  Although there is reason to doubt this claim,[8] the Court will accept it – and in any event, Hartford has cited no authority for the proposition that the appropriate judicial response to Hughes's breach of the rules is to ignore factual information like the draft report.  The cases it cites merely stand for the proposition that the Court has broad discretion in crafting sanctions for discovery misconduct.  *E.g.*, *Herrera-*

---

[8]      The Court notes that another member of Hughes's legal team, Attorney Scott Reimer, was counsel of record in another disability benefits case in which Rule 45(a)(4) was violated.  *N'Diaye v. Metro. Life Ins. Co.*, No. 17-CV-4260 (GBD) (BCM), 2018 WL 2316335, at *3 (S.D.N.Y. May 18, 2018).

*Mendoza v. Byrne*, No. 3:05-cv-1195 (RNC) (DFM), 2006 WL 2838952, at *3 (D. Conn. Sept. 29, 2006).  None of them support the claim that ignoring the document is the right way to exercise that discretion.

The Court therefore grants Hughes's motion to compel compliance with Request for Production No. 12, but only to the extent necessary to obtain production of (a) drafts of Dr. Slattery's peer evaluation and (b) correspondence between ECN or Hartford on the one hand, and Dr. Slattery on the other hand, concerning the content of the evaluation – to the extent that it has not already been produced.  The motion to compel is denied with respect to the remainder of Request for Production 12, and also with respect to Requests for Production 1, 3, 4 and 5 and Interrogatories 7, 8 and 9.

### 4.   Requests going to Hartford's compliance with Department of Labor claims handling regulations

Hughes next seeks production of documents "going to [Hartford's] compliance with the Department of Labor's claims handling regulation," 29 C.F.R. § 2560-503.1.[9]  She seeks several

---

[9]      The following discovery requests fall under this heading:

**Request for Production No. 2:**  Please produce all documents or ESI which you contend demonstrate that your claims procedures, under the Plan, contain "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants" within the meaning of 29 C.F.R. § 2560.503–1.

**Request for Production No. 3:**  Please produce all documents or ESI that reference or describe your policies and procedures to ensure the professional qualifications, independence and impartiality of medical consultants retained to review claims and/or examine claimants.

**Request for Production No. 9:**  Please produce all documents or ESI that reflect claims manuals, guidelines or policies used or consulted in the adjudication of Ms. Hughes' claim or appeals which demonstrate or reflect internal procedures for selecting claims for Independent Medical Examinations (IMEs) versus non-examining file reviews. [Footnote continued on next page.]

classes of documents under this heading, including "claims manuals, guidelines or policies used or consulted in the adjudication of [her] claim or appeals." (Mot. to Compel, ECF No. 33, at 17.) She says she needs documents like these to explore whether Hartford complied with "the spirit and letter of" the regulation requiring a "full and fair review" during the appeals process. (*Id.* at 29.)

If this were her only argument, the Court would deny this portion of her motion – because an ERISA claimant may not obtain extra-record discovery merely by claiming a need to confirm that she was fairly dealt with. "[I]t is well-settled that the party seeking additional discovery must do more than merely claim that it is needed to determine whether she received a full and fair review." *Feltington*, 2016 WL 1056568, at *9 (quoting *Hamill v. Prudential Ins. Co. of Am.*, No. 11-CV-1464, 2012 WL 6757211, at *10 (E.D.N.Y. Sept. 28, 2012) (quotation marks omitted). Put differently, plaintiffs cannot obtain extra-record discovery with a mere "assertion" that it is necessary to confirm "full and fair" treatment. *Lane*, 2006 WL 3292463, at *2.

Yet while Hughes may not be entitled to this category of documents under the judicially created "reasonable chance" standard, she is entitled to some of them under the ERISA "Claims Procedure" regulation, 29 C.F.R. § 2560.503-1. Subsection (j)(3) of the regulation provides that, when the administrator makes an "adverse benefit determination" on appeal, the claimant is entitled to free copies of "all documents, records and other information relevant to" her claim for

---

**Request for Production No. 10:** Please produce all claims manuals used or consulted in the adjudication of Ms. Hughes' claims or appeals. Please identify any responsive documents or ESI produced in response to other requests.

**Request for Production No. 11:** Please produce all documents or ESI reflecting any internal rules, guidelines or procedures which describe or discuss the employability or disability status of a claimant who suffers from intermittent absences from work due to their symptoms.

**Interrogatory No. 3:** Please describe any incentive, bonus, or reward programs or systems, formal or informal, for any employees involved in the review of Plaintiff's disability claim or appeal.

benefits.  29 C.F.R. § 2560-503.1(j)(3).  Subsection (m)(8) defines "relevant" documents to include

any document that:

> (i)     Was relied upon in making the benefit determination;
>
> (ii)    Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination;
>
> (iii)    Demonstrates compliance with the administrative processes and safeguards required pursuant to [29 C.F.R. § 2560-503.1(b)(5)] in making the benefit determination; or
>
> (iv)    In the case of a . . . plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied . . . benefit . . . without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560-503.1(m)(8).  Thus, leaving aside whether the discovery rules entitle Hughes to

(for example) copies of claims procedures that Hartford relied upon in deciding her appeal, the

Claims Procedure regulation certainly does.

Hartford objects to producing even those documents that the regulation requires it to

provide on demand, but its objections lack merit.  Hartford first points out that the regulation "does

not address, at all, the scope of discovery in ERISA claim litigation" (Opp'n to Mot. to Compel,

ECF No. 40, at 24), and that is true as far as it goes.  *Weinberg v. UNUM Life Ins. Co. of Am.*, No.

17-Civ.-8976 (RA) (HBP), 2018 WL 5801056, at *3 (S.D.N.Y. Nov. 6, 2018) ("On its face, the

regulation does not purport to supplant Fed. R. Civ. P. 26(b)(1) in an action brought in a United

States District Court pursuant to" ERISA.).  But the Court is at a loss to understand why a plaintiff

cannot obtain, through a Rule 34 request, documents that she could have obtained merely by

sending a letter under the regulation.  Hartford also asserted a burdensomeness objection to

producing these documents (ECF No. 33-2), but it did not brief that objection – and in any event,

it is well-settled that such objections ordinarily cannot be sustained without an affidavit explaining

the nature and extent of the burden.  *E.g.*, *Pegoraro v. Marrero*, 281 F.R.D. 122, 128-29 (S.D.N.Y.

2012).  Hartford also contends that its "internal claim procedures are . . . confidential business

documents" (Opp'n to Mot. to Compel, ECF No. 40, at 26), and perhaps they are – but in this case

that would merely be an argument for designating them "CONFIDENTIAL" under the Standing

Protective Order, not for insulating them from discovery entirely.  The cases Hartford cites are not

to the contrary.  *See*, *e.g.*, *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 299 n.3

(E.D.N.Y. 2013) (Hartford affiliate had produced portions of claim manual to plaintiff under

Stipulated Protective Order; question was whether court should quote from the manual in its

published opinion); *Howard v. Hartford Life & Acc. Ins. Co.*, No. 3:10-cv-192-J-34TEM, 2011

WL 2746347, at *1 (M.D. Fla. June 22, 2011) (Hartford produced claim manual to plaintiff,

evidently without compulsion, but sought order that it not be further disclosed or disseminated);

*Takata v. Hartford Comprehensive Emp. Benefit Serv. Co.*, 283 F.R.D. 617, 620 (E.D. Wash. 2012)

(Hartford affiliate ordered to produce claims rules, guidelines and standards; question was whether

plaintiff's counsel could use them in later cases).

      With all of that said, the Claims Procedures regulation does not require production of every

company rule or guideline, however unrelated to Hughes's claim.  While Hartford errs when it

says that it need only disclose those rules and guidelines that were "relied upon in making the

adverse benefit determination" (Opp'n to Mot. to Compel, ECF No. 40, at 25)[10], Hughes errs when

---

[10]    Hartford cites subsection (j)(6)(iii) for this proposition, contending that it "speaks more directly" to the company's disclosure obligations than subsections (j)(3) and (m)(8) do.  And it notes that, in contrast to subsections (j)(3) and (m)(8), subsection (j)(6)(iii) is limited to rules and guidelines that are "relied upon in making the adverse determination."  (Opp'n to Mot. to Compel, ECF No. 40, at 25.)  But the Court disagrees that (j)(6)(iii) is the relevant subsection.  That subsection merely explains what rules and guidelines must be referenced in an appeal denial letter. Subsection (j)(3) is the one that explains what documents must be provided to the claimant upon request.

she suggests that she can discover every one of Hartford's claims procedures.  Under subsection

(m)(8), a procedure is "relevant" – and, therefore, subject to disclosure – only if it "[w]as relied

upon in  making the benefit determination," "[w]as submitted, considered, or generated in the

course of making the benefit determination," "[d]emonstrates compliance with the administrative

processes and safeguards required pursuant to [subsection (b)(5)] . . . in making the benefit

determination," or "constitutes a statement of policy or guidance with respect to the plan . . .

concerning the denied . . . benefit."  29 C.F.R. § 2560.503-1(m)(8).  This is certainly something

less than the entire universe of claims policies and procedures.

The Court therefore grants Hughes's motion to compel with respect to Requests for

Production Nos. 2, 3, 9, 10 and 11, but only to the extent that they inquire after documents that are

subject to disclosure under 29 C.F.R. §§ 2560.503-1(j)(3) and –(m)(8).  To the extent that Requests

for Production Nos. 2, 3, 9, 10 and 11 go beyond the scope of subsections (j)(3) and (m)(8), the

motion to compel is denied.  It is also denied to the extent that it seeks to compel an answer to

Interrogatory 3.

### 5.    Privilege issues

In 2017, Hartford's appeals specialist Nancy Hyndman had an e-mail exchange with one

of the company's in-house attorneys, Stephanie Johnson.  Hartford claims that the e-mail is

privileged, and it says that it listed the e-mail on a privilege log in *Hughes I*, but it neglected to

serve the log on Hughes then.  (ECF No. 33-11, at 2.)  When it served the log in this case, Hughes's

counsel asked why it had not been produced in *Hughes I*.  (*Id.* at 3-4.)  Hartford responded that it

had been an oversight.  (*Id.* at 2.)

This chain of events led to two separate requests.  First, Hughes sought "the privilege log

created during the first round of litigation . . . in native format with metadata intact" (Mot. to

Compel, ECF No. 33, at 17), because she disbelieved Hartford when it said that the log was created in 2017 but inadvertently not served then.  Second, Hughes contended that the correspondence is likely not privileged, and that it should be submitted for *in camera* privilege review.  (*Id.* at 21-22.)  Although Hartford initially resisted on the first issue, after oral argument it informed the Court that it has produced the log in native format.  Thus, only the second issue remains.

Hughes seeks *in camera* review under the "well-known fiduciary exception" to the attorney-client privilege.  (*Id.* at 21.)  Citing *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011), she notes that "when a trustee obtains legal advice relating to the exercise of fiduciary duties," it "cannot withhold attorney-client communications from the beneficiary of the trust."  (*Id.*)  She further notes that "the Second Circuit has adopted the fiduciary exception in the ERISA context."  (*Id.*) (citing *In re Long Island Lighting Co.*, 129 F.3d 268, 271-72 (2d Cir. 1997)) She seeks *in camera* review to "confirm . . . whether the subject matter of the document relates to Hartford's plan administration," in which case she says it should be produced.  (*Id.* at 22.)

Hartford contends that the fiduciary exception is itself subject to an exception.  Citing the Third Circuit case of *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 234 (3d Cir. 2007), Hartford says that while the fiduciary exception may apply to employers who act as their own administrators, it "does not apply to an insurer" serving in that role.  (Opp'n to Mot. to Compel, ECF No. 40, at 11.) Hartford observes that the most important factor in determining the applicability of the fiduciary exception is the "source of funds" used to pay the lawyer – and because it used its own funds and not trust funds to pay Attorney Johnson for her legal advice, the exception does not apply.  (*Id.*)

Hughes's position aligns with the current state of the law in the Second Circuit, and Hartford's does not.  The Second Circuit Court of Appeals has held that an "ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are

intended to assist in the administration of the plan." *In re Long Island Lighting Co.*, 129 F.3d at 272. This obligation arises out of the fiduciary's duty "to provide full and accurate information to the plan beneficiaries" regarding plan administration, *id.* at 271, and nothing in the court's opinion suggests that the obligation applies only to non-insurer fiduciaries. Principally for this reason, Hartford's proposed "exception to the exception" has been rejected by district courts within the Second Circuit. *McFarlane v. First UNUM Life Ins. Co.*, 231 F. Supp. 3d 10, 16 (S.D.N.Y. 2017); *cf. Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 718-22 (2007) (applying fiduciary exception to insurer fiduciary). The Court will therefore order Hartford to submit the document for *in camera* review.

**C.      Hartford's Motion for Protective Order**

As the parties acknowledge, Hughes's motion to compel and Hartford's motion for protective order almost entirely overlap. (*E.g.*, Pl.'s Memo. in Opp'n to Mot. for Prot. Order, ECF No. 39, at 1.) Hughes does claim that the motion for protective order raises one unique issue – she says that Hartford lacked standing to make it. (*Id.* at 2.)

Because the Court has outlined the scope of appropriate discovery in the context of Hughes's motion to compel party discovery, it declines to decide the issue of Hartford's standing to object to her non-party discovery. Even if Hartford has no standing, the Court certainly does. In cases where the party lacks standing to challenge a subpoena served on a non-party, the Court may nevertheless exercise its inherent authority to limit irrelevant or non-proportional discovery. *See* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] is outside the scope permitted by Rule 26(b)(1)"); *see also Griggs v.*

*Vanguard Group, Inc.*, No. CIV-17-1187 (SLP), 2019 WL 3058982, at *1 (W.D. Okla. May 7, 2019) (declining to "wade into the brambles to determine which objections Plaintiff has standing to assert" where circumstances merited limiting discovery).  Having allowed Hughes the full range of appropriate discovery through party-discovery devices, the Court holds that her subpoenas are cumulative and duplicative and seek information that is more conveniently obtained from Hartford than from the non-parties.  Hartford's motion for protective order is accordingly granted.

## III.   CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel is granted in part and denied in part.  Specifically:

A.   The Court orders Hartford to comply with Request for Production No. 7.

B.   The Court orders Hartford to comply with Request for Production No. 12 but only to the extent that it seeks production of (a) drafts of Dr. Slattery's peer evaluation and (b) correspondence between ECN or Hartford on the one hand, and Dr. Slattery on the other hand, concerning the content of the evaluation.

C.   The Court orders Hartford to comply with Requests for Production Nos. 2, 3, 9, 10 and 11, but only to the extent that those requests seek production of documents that are subject to disclosure under 29 C.F.R. §§ 2560.503-1(j)(3) and –(m)(8).

D.   The Court orders Hartford to submit the document referenced in its privilege log for *in camera* review.

E.   Hartford shall make the productions referenced in paragraphs III.A, -B and -C by 5:00 p.m. on Friday, June 5, 2020.  If it believes that the produced documents qualify for such treatment, Hartford may designate them as "CONFIDENTIAL" or

"CONFIDENTIAL – ATTORNEY'S EYES ONLY" pursuant to the Standing Protective Order.  (ECF No. 4.)

F.       The document referenced in paragraph III.D shall be submitted for *in camera* review by 5:00 p.m. on Wednesday, May 27, 2020.  Hartford is directed to contact Judge Farrish's law clerk at 860-240-3608 to arrange the transmittal of the document.

G.       The plaintiff's motion to compel is granted to the extent of the orders in paragraphs III.A – D, and otherwise denied.

H.       Hartford's motion for protective order is granted.

This is not a Recommended Ruling.  This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

Dated at Hartford, Connecticut this 22nd day of May, 2020.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge